UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THE NAUTILUS GROUP, INC., a Washington corporation,<br><br>　　　　　　Plaintiff<br>　　v.<br><br>SAVVIER, INC., a California corporation, and IMPEX, INC., a California corporation,<br><br>　　　　　　Defendants. | No.  CV-04-05031 RBL<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter is before the Court on defendant Savvier, Inc.'s Motion for Summary Judgment [Dkt. #67].  Savvier, Inc. ("Savvier") seeks a ruling as a matter of law that there is no likelihood of confusion between the mark to which Savvier is an exclusive licensee, BodyFlex, and the mark Nautilus, Inc. ("Nautilus") owns, Bowflex.  In the alternative, Savvier seeks partial summary judgment dismissing Nautilus's claims for an award of actual compensatory damages.  For the reasons explained below, this Court GRANTS the summary judgment motion.

## BACKGROUND

**A.　Nautilus and the Bowflex Mark**

Nautilus is a Washington corporation that manufactures the Bowflex exercise machine, a home

ORDER
Page - 1

gym that incorporates resilient rods to create a resistance training system.  Nautilus has a federal registered trademark for Bowflex, which was first registered in 1986.  The parties do not dispute that Bowflex is the senior user as compared to BodyFlex.

Bowflex exercise machines sell for an average price of $1,200, and are marketed to people who want to "work out like a body builder."  Bowflex, www.bowflex.com (last visited March 2, 2006). Commercials for Bowflex feature muscular men and women, heavy-bass music, and a narrated voice-over extolling the virtues of owning a Bowflex exercise machine. Bowflex also sells accessories for its exercise machine, including a T-Bar priced at $29.95 and videos priced at $49.95.  Its products are sold through trade shows, infomercials, the internet, and traditional media including print publications and mass mailings.  Consumers of Bowflex are approximately 30% female and 70% male, although Bowflex aims to increase its female consumer base.  Nautilus has invested more than $400 million to promote the Bowflex brand, which enjoys significant brand recognition.

The Bowflex logo features pronounced bold letters, stretched like the bow of an arrow and flanked on the left by the bow-like outline of a "B."



### B.   Savvier and the BodyFlex Mark

Savvier is a direct marketing company based in California.  In 2002, after assurances that BodyFlex had received no complaints involving any of BodyFlex's trademarks, Savvier became the

exclusive licensee of BodyFlex products.

The disputed BodyFlex product in this case is called the GymBar. The GymBar, created in 2001 or 2002, is a molded plastic exercise bar with resilient rubber tubing attached to each end. The product succeeds the GymBag, a resilient rubber tube with handles that BodyFlex modified when it introduced the GymBar. In photographs grafted onto the molded plastic of the GymBar, Greer Childers ("Childers"), the founder of BodyFlex, demonstrates three different ways to use the GymBar to exercise the arms and legs. The GymBar sells for $39.99, and comes with two videotapes, an instruction manual, a tape measure, and a carrying bag.

Since 1992, BodyFlex has advertised using infomercials. BodyFlex also advertises its products online. Infomercials feature Childers, the ever-spunky founder who is now in her 60s, encouraging women (and some men) who are getting up in years to maintain flexible muscles, even if they have to work out while sitting. According to a 2002 survey, 98 percent of BodyFlex consumers are women, and from the infomercials, many of them appear to start off or remain overweight.

The BodyFlex logo features a forward-leaning italic font, "Body Flex+," with a light underlining swoosh.



**DISCUSSION**

**A.   Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a

matter of law. Fed. R. Civ. P. 56(c). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir.1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### B. Likelihood of Confusion in a Trademark Case

In a trademark case, the court applies the law of the applicable regional circuit, in this case, the Ninth Circuit. *See Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 987-88 (Fed.Cir.1993). In the Ninth Circuit, the core element in a trademark infringement case is whether the reasonably prudent consumer is likely to be confused as to the origin of the good or service bearing one of the marks. *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir.1998). The determination of whether there is a likelihood of confusion is inherently factual. *Thane Int'l, Inc. v. TREK Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir.2002). Because of the inherently factual nature of a trademark case, determining likelihood of confusion usually requires a full record. *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 901-02 (9th Cir.1997). Although disfavored, a district court may grant summary judgment if no genuine issue exists regarding likelihood of confusion. *Thane Int'l, Inc.*, 305 F.3d at 901-02.

In *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir.1979), the Ninth Circuit developed an eight-factor test to guide the court in assessing the basic question of likelihood of

confusion. *Enterpreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir.2002). The *Sleekcraft* factors, as applied to this case, are:

1. The strength of the Bowflex trademark;
2. The similarity of the marks;
3. The proximity or relatedness of the goods or services;
4. Savvier's intent in selecting the mark;
5. Evidence of actual confusion;
6. The marketing channels used;
7. The likelihood of expansion of product lines; and,
8. The degree of care consumers are likely to exercise.

Each factor is factual in nature, *id*, and should not be rigidly weighed. *Dreamwerks*, 142 F.3d at 1129. Rather, the test for likelihood of confusion is pliant, and the relevant importance of each individual factor will be case-specific. *Brookfield Comms., Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1054 (9th Cir.1999). Actionable confusion for purposes of a trademark infringement analysis must be probable, not simply a possibility. *Murray v. Cable NBC Co.*, 86 F.3d 858, 861 (9th Cir.1996).

**1.    Strength of the Bowflex mark**

The purpose of examining the strength of the plaintiff's mark is to determine the scope of trademark protection to which the mark is entitled. *Enterpreneur Media*, 279 F.3d at 1141. The more unique the mark, the greater the degree of protection against trademark infringement. *Id*.

There are five categories of trademarks. In ascending order of strength, they are as follows: (1) arbitrary; (2) fanciful; (3) suggestive; (4) descriptive; and (5) generic. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631-32 (9th Cir.2004). Even if a mark is classified as strong, it may be weak if it exists in a "crowded field." A mark exists in a crowded field if it is hemmed in by similar marks selling similar goods. *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir.1988); *see also Halo Management, LLC v. Interland, Inc.*, 308 F.Supp.2d 1019, 1034 (N.D. Cal. 2003) (holding that in the internet service industry, marks bearing the word "halo" exist in a crowded field because there are dozens of marks using the same word).

This Court has previously determined, and the Federal Circuit court applying Ninth Circuit law agreed, that the Bowflex mark is a suggestive mark. *Nautilus Group, Inc. v. Icon Health & Fitness, Inc.*, 372 F.3d 1330, 1343 (Fed. Cir.2004). The court added that Nautilus's advertising has further strengthened the Bowflex mark such that Bowflex enjoys a high level of brand recognition. *Id*. While Bowflex is a suggestive mark, this Court notes that the term "flex" has been used by at least 25 other marks in the exercise industry. Despite this fact, the Court concludes that the strength of the mark factor slightly favors Nautilus.

### 2. The similarity of the marks

Similarity of the marks is tested on three levels: (1) sight, (2) sound, and (3) meaning. *Sleekcraft*, 599 F.2d at 350. At least one circuit has held that sound is more significant when the brand names are marketed on the radio or television. *TBC Corp. v. Holsa, Inc.*, 126 F.3d 1470, 1472 (Fed. Cir. 1997). Each mark should be considered in its entirety as it is encountered in the marketplace. *Sleekcraft*, 599 F.2d at 350. Similarities weigh more than differences. *Id*.

First, with regard to sight, the strongest similarity between Bowflex and BodyFlex is in the spelling of the two marks. Both start with "bo" and end with "flex." But the similarities end there. The font used to advertise the two marks on the internet and on the products themselves are distinct. Bowflex's mark uses bold and authoritative letters, stretched like an arrow, and flanked by the bow-like outline of the letter "B." In contrast, BodyFlex's mark uses forward-leaning cursive font with a light underlining swoosh. In sum, the sight of the two marks does not give rise to confusion.

Second, with regard to sound, the two marks are dissimilar except for the common suffix "flex." The common sound of flex is not sufficient ground for this Court to conclude that Bowflex and Bodyflex sound alike. The sound of the two marks does not give rise to confusion.

Third, with regard to meaning, the marks are dissimilar because they bring to mind different

images. On one hand, Bowflex brings to mind an archer flexing to pull back an arrow on his bow. Bowflex has argued before that this is the image it intends to convey to its customers. *Nautilus Group, Inc.*, 372 F.3d at 1342. On the other hand, BodyFlex is less specific and brings to mind a person flexing into different positions. Because of these differences, the Court concludes that this sub-factor does not give rise to confusion.

In short, except for the spelling of the two marks, there is not much similarity between the two marks in terms of sight, sound, and meaning. Thus, even though we weigh similarities more than differences, the similarity of marks factor tips in favor of Savvier.

**3.     The proximity or relatedness of the goods or services**

When two goods are related, the danger is that the public will mistakenly assume there is an association between the producers of the related goods. *Sleekcraft*, 599 F.2d at 350. Goods are related when they are complementary and where they are similar in use and function. *Id*. Courts have also noted that goods are related when they are sold to the same class of consumers. *See Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F.Supp.2d 1083, 1092 (C.D. Cal. 2003) (citing *Sleekcraft*, 599 F.2d at 350). However, the fact that two goods fall within the same general field of products is not sufficient reason to conclude they are related. *Id*. (citing *Harlem Wizards Entm't Basketball, Inc. v. NBA Props.*, 952 F. Supp. 1084, 1095 (D.N.J.1997)). Moreover, courts have noted that consumers differentiate between expensive and inexpensive goods. *See e.g. id*.

One could argue that Bowflex and BodyFlex are similar in function and use because both products function using resistance for the ultimate goal of toning muscles. However, a reasonably prudent consumer is unlikely to conclude that the goods are related for those reasons alone.

A reasonably prudent consumer would first look to the price of each product, and would note that while BodyFlex costs approximately $40, the average price for a Bowflex home gym is $1,200. Even if a

ORDER
Page - 7

consumer bought a $40 GymBar believing she had managed a bargain purchase on a Bowflex product, she would notice a difference in the function of the product. For example, Tessema Dosho Shifferaw, inventor of the Bowflex home gym, commented in his deposition that the GymBar by BodyFlex resembles a "gimmicky product," a "bungee cord [sic] with a stick in the middle." Deposition of Tessema Dosho Shifferaw, attached to Deposition of Mark Carlson and Exhibits in Opposition to Savvier's Motion for Summary Judgment as Exhibit R, at 43. The molded plastic "stick" features photographs of Greer Childers demonstrating stretching positions. These are not functions a reasonable consumer would expect from a Bowflex machine, advertised as a series of exercise cables and rods that allow the user to train with up to 400 pounds of resistance.

The two goods are marketed to different classes of consumers who aim to exercise. Bowflex ads reach out to former athletes who seek to get back into shape or current athletes who seek to improve their game. They feature interviews with people who use Bowflex to increase efficiency in their next triathlon. BodyFlex is unmistakably different. Greer Childers stars in 30-minute infomercials staged in a place meant to be her own living room. Before she ever introduces the GymBar product, she gives a pep talk to her potential consumers, including overweight people (primarily women) and some people with disabilities. It is hard for this Court to imagine a reasonably prudent consumer who seeks to buy a Bowflex machine accidentally purchasing, much less keeping, a BodyFlex GymBar. The relatedness factor favors Savvier.

**4.     Savvier's intent in selecting the mark**

A party claiming trademark infringement need not demonstrate that the alleged infringer intended to deceive consumers. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir.1992). But when the alleged infringer knowingly adopts a mark similar to another, the court must presume that the public will be deceived. *Sleekcraft*, 599 F.2d at 354.

ORDER
Page - 8

In this case, however, defendant Savvier had nothing to do with the selection of the name BodyFlex, a name that Greer Childers had selected more than a decade before. The fact that Savvier knew of Bowflex when it became the exclusive licensee of BodyFlex is unrelated to the selection of the name BodyFlex. Nor is there any evidence to suggest that the GymBar was intended to copy resistance training of the sort Bowflex markets. This factor does not favor either party.

### 5. Evidence of actual confusion

Courts have held that evidence of actual confusion may be shown by instances of actual confusion, by survey evidence, or by both. *See e.g. Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 850 F.Supp. 232, 245 (S.D.N.Y. 1994) (citing *Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.*, 926 F.2d 134, 140 (2d Cir.1991). The lack of evidence of actual confusion after an ample opportunity can be a powerful indication that there is no likelihood of confusion between the two marks. *Cohn v. Petsmart*, 281 F.3d 837, 842 (9th Cir.2002). However, because it can be difficult to prove actual confusion, "the failure to prove instances of actual confusion is not dispositive." *Sleekcraft*, 599 F.2d at 353.

Here, Bowflex and BodyFlex have co-existed since at least 1992, when BodyFlex started to air infomercials. Since the introduction of the disputed GymBar by BodyFlex in 2001 or 2002, the two marks continued to co-exist for approximately three years. Throughout the existence of the two marks, there has been one phone call to BodyFlex from a customer who called to discuss a credit card charge from Bowflex. No other call records from either mark suggest that there has been actual confusion.

In addition to this phone call, Savvier presented a mall intercept survey of 300 women. These survey participants were selected because they said they shopped for home exercise equipment in the past year or they said they would definitely or probably shop for such products, and they considered purchasing such products on a shopping channel in the past year. The Savvier survey demonstrates a 4

ORDER
Page - 9

percent rate of confusion between the two marks. For purposes of summary judgment, and in light of Nautilus' objections to the survey and the manner in which it was conducted, this Court will not consider the survey results. Nor will this Court consider the statement by the inventor of Bowflex that he and his family confused the GymBag by BodyFlex for its own Bowflex exercise equipment.

Of the evidence presented on actual confusion, the Court is left with one confused phone call to BodyFlex. However difficult it may be to prove confusion over the three years that the two marks sold resistance exercise products or the thirteen years the marks co-existed, one phone call is simply not enough to demonstrate a likelihood of confusion. The evidence of actual confusion factor favors Savvier.

**6. The marketing channels used**

Convergent marketing channels increase the likelihood of confusion. *Sleekcraft*, 599 F.2d at 353. Although Bowflex uses other marketing channels (including print, radio, trade shows, and dealerships), both marks depend on infomercials and the internet to market their products. The overlap is clear, and this factor favors Nautilus.

**7. The likelihood of expansion of product lines**

A strong possibility that either mark may expand its business to compete with the other will weigh in favor of the conclusion that the present use is infringing. *Sleekcraft*, 599 F.2d at 354. This Court concluded above that the two marks and their products are not proximate in class of consumers, use, or function. Nor does it appear that the two marks are likely to converge. Bowflex has not expressed any new plans to expand its business to directly compete with BodyFlex, which would require Bowflex to drop its price on its main resistance equipment, gear its ads to non-athletic types, and de-emphasize building body mass.[1] Conversely, BodyFlex has not demonstrated that it will increase its price or quality to provide heavier strength-training equipment for athletes who seek to build more muscle.

---

[1] Bowflex accessories, such as the T-bar, do not mark an expansion toward a GymBar-like product because a consumer would only purchase such accessories once he or she owns a Bowflex home gym.

ORDER
Page - 10

In short, there appears to be no likelihood of expansion of product lines because there is no evidence that the product lines are converging. This factor favors Savvier.

### 8. The degree of care consumers are likely to exercise

Courts use the reasonably prudent consumer test to measure the degree of care consumers are likely to exercise. *See e.g. Brookfield*, 174 F.3d at 1060. Using the reasonably prudent consumer test, courts analyze the price of the product and the level of sophistication expected of a consumer buying the product. *Id*. When the product is expensive, a buyer can be expected to exercise greater care. *Sleekcraft*, 599 F.2d at 353. However, the fact that a typical buyer would exercise care does not guarantee that confusion as to association or sponsorship is unlikely. *Id*.

This Court has noted the difference in price between a Bowflex home gym, selling for an average of $1,200, and a GymBar by BodyFlex, selling for $40. The difference in price is likely to make a reasonably prudent consumer relatively more cautious about buying a Bowflex product.

In comparison, BodyFlex sales of the GymBar appear to be based on consumers who buy on impulse after watching a BodyFlex infomercial featuring Greer Childers. According to BodyFlex infomercial and sales records, sales spike every time Childers presents BodyFlex products, including the GymBar, on live or pre-recorded home shopping networks. No comparable data was presented with respect to Bowflex products.

Thus, based on the difference in price and the apparent impulsive nature of BodyFlex purchases, this Court concludes that consumers are more likely to exercise greater care when they buy a Bowflex product than when they buy a product by BodyFlex. The contrast this factor presents favors Savvier.

## CONCLUSION

In conclusion, two factors favor Nautilus: Bowflex maintains a strong mark and the Bowflex and

BodyFlex marks are sold through similar marketing channels. However, neither of these factors is likely to lead a reasonably prudent consumer to confuse the two marks. The marks are dissimilar; they do not appear related; there is no likelihood that the marks are converging in use or appearance; and consumers of Bowflex are likely to use greater care when buying a Bowflex product. Most importantly, in the years the two marks have co-existed, there is only one consumer call to evidence actual confusion. Based on this reasoning, the Court concludes that there is no likelihood of confusion, that there is no genuine issue of material fact, and that no reasonable juror could see it otherwise.

It is therefore ORDERED that the Defendant's Motion for Summary Judgment [Dkt. #67] is GRANTED. The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 5th day of April, 2006.

                                                         RONALD B. LEIGHTON
                                                         UNITED STATES DISTRICT JUDGE